## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DANIEL LIBIT, | ) | Civil Action No. _____ |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES MILITARY ACADEMY and ARMY WEST POINT ATHLETIC ASSOCIATION, | ) | |
| Defendants. | ) | |

### COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Daniel Libit, by his undersigned attorneys, alleges:

### INTRODUCTION

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.  Plaintiff seeks the immediate processing and release of agency records from Defendants United States Military Academy (commonly known as "West Point") and Army West Point Athletic Association ("AWPAA").

2.      Defendants are the Army's premier leadership training institution and the federally authorized nonprofit corporation established to run its athletic programs.

3.      In 2015, West Point spun off its athletic programs to AWPAA, a non-profit entity created to enable West Point to take in revenue, lure athletes, and pay coaches on a scale done by Division I sports powerhouses competing in the $14 billion college sports industry.

4.      But West Point is not the University of Georgia, nor Ohio State. It is a component of the United States Army with a unique mission to train and prepare Army cadets for careers in national service using taxpayer funds.

5.      Last December, Congress passed a bill revoking a policy adopted by the Pentagon in 2019 that allowed U.S. military academy graduates to defer their military service while they played professional sports. As underscored by Representative Mike Gallagher, a Republican co-sponsor of the bill, "U.S. military service academies exist to produce warfighters, not professional athletes."[1] The academies must be "laser-focused on th[at] core, tax-payer supported mission."

6.      West Point is a federal institution supported by taxpayer dollars and is thus subject to the same obligations of transparency and public scrutiny as other federal agencies, including the obligation to comply with FOIA's disclosure mandate.

7.      Yet, since incorporating AWPAA to take charge of the athletic programs it had long run itself, West Point has taken the position that records concerning its athletic programs—from what the football coaches are paid, to the terms of lucrative merchandising and multimedia rights agreements, and even West Point's financial arrangements with AWPAA—are not subject to disclosure in response to FOIA requests submitted to West Point because all records concerning its athletic activities supposedly now "belong" to AWPAA.

8.      AWPAA simultaneously takes the position that, as a "private" nonprofit organization, it is not subject to FOIA, notwithstanding that it is in every relevant respect controlled by and enmeshed within the West Point military academy that founded it and that it serves exclusively.

---

[1] *See* Pete Thamel, *NFL draft path cleared for Andre Carter II due to bill provision*, ESPN.com (Dec. 20, 2022), https://www.espn.com/college-football/story/_/id/35291263/nfl-draft-path-cleared-andre-carter-ii-due-bill-provision (explaining an amendment to the bill that grandfathered in the right of athletes already attending the military academies to defer their military service).

9.     This two-step machination to declare whole categories of the federal military institution's records off limits to public view violates FOIA.

10.     Plaintiff Daniel Libit has requested agency records subject to FOIA from West Point and AWPAA. They are obligated to produce them, but refuse to do so. Libit brings this action to vindicate his and the public's right to inspect public records concerning the operation, finances, and funding of athletic programs at this revered federal institution.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

12.     On information and belief, Defendants' records are located in this district and venue is proper under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

13.     Plaintiff Daniel Libit is a professional journalist who writes about college sports for the online news service Sportico. Libit is also a co-founder of *The Intercollegiate*, an investigative news outlet covering college sports that has earned national recognition for its investigative reporting based on public records requests. Libit is a resident of Highland Park, Illinois.

14.     Defendant United States Military Academy ("West Point") is a component of the United States Department of the Army, which reports to the U.S. Department of Defense. West Point is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has possession or control of records that Plaintiff seeks.

15.     Defendant Army West Point Athletic Association ("AWPAA") is a tax-exempt 501(c)(3) corporation organized pursuant to authority granted in 10 U.S.C. § 7462. Its mission is to operate West Point's intercollegiate athletics programs. AWPAA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and has possession or control of records that Plaintiff seeks.

3

## FACTUAL AND LEGAL BACKGROUND

### Sports Programs at the Nation's Military Academies

16.     Founded in 1802, the United States Military Academy at West Point was borne out of a desire "to establish an institution devoted to the art and science of warfare to train and develop officers for the Army."[2]

17.     West Point is a singular institution, with a mission "to educate, train, and inspire the Corps of Cadets so that each graduate is a commissioned leader of character committed to the values of Duty, Honor, Country and prepared for a career of professional excellence and service to the Nation as an officer in the United States Army."

18.     Following West Point's founding, the United States Naval Academy, United States Air Force Academy, United States Coast Guard Academy, and United States Merchant Marine Academy were also created, to prepare cadets and midshipmen for service in the nation's armed forces. The service academies are revered federal institutions supported by taxpayer dollars.

19.     For over a century, West Point has recognized the importance of athletic pursuits to its unique mission. In response to increasing physical demands he experienced on the battlefields of World War I, in 1919 Superintendent General Douglas MacArthur modernized the Academy, emphasizing physical fitness and athletics under the credo, "Every cadet an athlete."[3]

20.     Athletics has since played a large role in the development of the service academies, attracting students and prestige, while also supporting military training and physical fitness.

21.     College athletics in United States are not what they were in the early twentieth century, however. In recent years, college sports have ballooned into what the United States

---

[2] United States Military Academy (West Point), *A Brief History of West Point*, https://www.westpoint.edu/about/history-of-west-point (last visited Jan. 27, 2023)

[3] *Id.*

Department of Education now estimates as a $14.4 billion industry, including broadcast rights, merchandise, and ticket sales.

22.     The service academies initially struggled to compete in this arena because of federal restrictions on scholarships, contracting, and fundraising. NCAA Division I sports programs at Army, Navy, and Air Force faced skyrocketing costs, amounting to over $40 million in recent years.[4]

23.     The service academies have long had booster organizations supporting their athletics programs. But the academies were being outspent by other Division I athletic heavyweights and faced recruiting challenges. They thus searched for a way to increase fundraising to keep pace with their athletic competitors.

24.     In 2009, the Air Force petitioned for federal legislation allowing it to outsource its athletic programs to a nonprofit 501(c)(3) corporation. In 2010, Congress obliged, including a provision in the National Defense Authorization Act deputizing the Secretary of the Air Force to create a nonprofit entity to manage the Air Force Academy's athletics program.

25.     In 2013, again as part of the National Defense Authorization Act, Congress similarly authorized the Secretary of the Navy to formalize its relationship with the longstanding Naval Academy Athletic Association, to operate the university's athletics program.

**The Army West Point Athletic Association**

26.     Army followed suit in 2015. In October, three West Point donors and alumni incorporated the Army West Point Athletic Association, Inc. as a Not-for-Profit corporation under New York law. The three alumni became AWPAA's interim board members.

---

[4] Brent Schrotenboer , *Army, Air Force, Navy all now outsourcing athletics*, USA Today (Nov. 8, 2017), https://www.usatoday.com/story/sports/2017/11/08/army-air-force-navy-all-now-outsourcing-athletics/820130001/

27.     According to its bylaws, AWPAA's charitable mission is the same as the mission statement of West Point's Directorate of Intercollegiate Athletics: "to provide an extraordinary Division I athletic experience that develops leaders of character committed to the values of Duty, Honor, Country" at West Point.[5]

28.     The West Point's Board of Visitors then urged the academy's administrators to support the creation of AWPAA under control of "a Board of Directors run by the West Point Command"[6] in order to allow those overseeing the athletic programs to earn market rates and to raise revenue, among other benefits.[7]

29.     West Point required that three of AWPAA's board positions be filled by the Academy's Commandant, Dean, and Director of Admissions. Concurrently, West Point asked Congress to authorize it to enter into a sole-source cooperative agreement with AWPAA to run the Military Academy's athletic program, which Congress did through the 2015 National Defense Authorization Act.

30.     In so doing, Congress set strict federal oversight and controls on AWPAA's finances and performance as a precondition of allowing the Secretary of the Army to enter into contracts and cooperative agreements with the organization that would run West Point athletics.

---

[5] *Compare Army West Point Athletic Association*, CHAR410: Registration Statement, attached here as Exhibit A, *with ODIA Mission*, GoArmyWestPoint.com, https://goarmywestpoint.com/sports/2015/3/6/GEN_2014010140?prl=635709102070416366 (last visited Jan. 27, 2023).

[6] *2016 Annual Report*, United States Military Academy Board of Visitors, 5-6 (Jan. 30, 2017), https://www.westpoint.edu/sites/default/files/pdfs/ABOUT/Board%20of%20Visitors/Bov%202016%20Annual%20Report.pdf (last visited Jan. 27, 2023).

[7] *2015 Annual Report*, United States Military Academy Board of Visitors, 73 (Jan. 16, 2016), https://www.westpoint.edu/sites/default/files/pdfs/ABOUT/Board%20of%20Visitors/2015%20Annual%20Report.pdf (last visited Jan. 27, 2023).

31.    For AWPAA to retain its cooperative agreement with West Point, Congress mandated that it "operate exclusively" to support West Point's athletic programs. 10 U.S.C. § 7462 (g)(2).

32.    Congress also required the Army to implement all "appropriate financial controls to account for Academy and Association resources," 10 U.S.C. § 7462(a)(2), while allowing such resources to reach all support services" deemed "essential" for AWPAA to administer West Point's athletic programs, including "utilities, office furnishings and equipment, communications services, records staging and archiving, audio and video support, and security systems in conjunction with the leasing or licensing of property." 10 U.S.C. § 7462(b)(2).

33.    Under its enabling statutory authority, the cooperative agreement between West Point and AWPAA must also allow the Secretary of the Army, at her discretion, to review AWPAA's financial accounts to determine whether its operations will "compromise the integrity or appearance of integrity of any program of the Department of the Army." U.S.C. § 7462(a)(2).

34.    This statutory requirement for federal financial oversight and control extends to any licensing, marketing, sponsorship, and trademark agreements AWPAA enters. These the Secretary must ensure do "not reflect unfavorably on the ability of the Department of the Army, any of its employees, or any member of the armed forces to carry out any responsibility or duty in a fair and objective manner, or compromise the integrity or appearance of integrity of any program of the Department of the Army, or any individual involved in such a program." U.S.C. §§ 7462(c)(3), (d)(2).

## The Military Academy's Melding With and Control Over AWPAA

35.    In early 2016, AWPAA sought recognition from the Internal Revenue Service of tax-exempt status under Section 501(c)(3) of the Internal Revenue Code. In its application to the IRS, the organization made clear its special Congressional authorization to serve and be overseen

by West Point and the Secretary of the Army.  Its application stated that West Point's

"Superintendent exercises oversight and control of [AWPAA]'s activities through reports from the

officers of [AWPAA] concerning all negotiations, plans, appointments, audits, and budget

proposals of [AWPAA] which directly affect the charitable and educational purposes of [West

Point]'s intercollegiate athletics program, all of which are subject to the approval of the

Superintendent."[8]

36.     Soon after, in early 2017, the Army announced that it had entered into a cooperative

agreement whereby AWPAA would run West Point athletics.[9] The announcement stressed that

AWPAA would manage personnel, negotiate contracts and sponsorship opportunities, and oversee

the athletic facilities, while remaining "compliant with auditing and accountability requirements"

and with West Point's standards and mission. The Army claimed the process would "appear

transparent to most."[10]

37.     Thereafter, West Point went about installing its own personnel and resources into

roles at AWPAA. The West Point Superintendent sought and selected a new Athletic Director,

Mike Buddie, who was simultaneously made President and CEO of AWPAA.[11]

---

[8] *Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code*, Army West Point Athletic Association, Inc. (April 12, 2016), attached as Exhibit B.

[9] *Athletic Association Improves Function Under New Agreement*, USMA Public Affairs Office, Release No. 01-17 (Feb. 13, 2017),

https://www.army.mil/article/182377/athletic_association_improves_function_under_new_agreement.

[10] *Id*.

[11] In this role, Buddie has regularly directed the promotion and firing of AWPAA employees. *See Complaint*, *Oliver v. Army West Point Athletic Association*, Case No. 7:20-cv-06934 (filed 08/27/20); *see, e.g.*, "Kristine Fowler," *Staff Directory*, https://goarmywestpoint.com/sports/womens-basketball/roster/staff/kristine-fowler/32 (last visited Jan. 27, 2023) (describing being elevated to Deputy Athletics Director & Chief Operating Officer in July 2022 by Director of Athletics, Mike Buddie, "to work alongside him in directing the overall planning, implementation, administration, and day-to-day operations of the department that supports more than 1,000 cadet-athletes in 30 competitive programs").

38.     The majority of West Point athletic department employees have been transferred over from West Point into employment with AWPAA.[12]

39.     The first two years of its existence, AWPAA filed Form 990 disclosures with the IRS. Such disclosures, which 501(c)(3) entities are required to make public, provide important information about the finances and activities of tax-exempt organizations.

40.     In 2018, however, AWPAA petitioned the IRS for an exemption from filing a Form 990 on the grounds that it is a "governmental unit" or "affiliate of a governmental unit." Such exemptions are available to entities that, like AWPAA, are "operated, supervised, or controlled by" governmental units, created by a governmental unit, and are financially accountable to a governmental unit.[13]

41.     That same year, AWPAA filed amended bylaws with the State of New York, indicating again that it is a "government agency" or an entity "controlled by a government agency, the U.S. Congress or New York State Legislature."[14]

42.     AWPAA's office is in the same building as the West Point Office of the Directorate of Intercollegiate Athletics.

43.     AWPAA staff use West Point email addresses and telephone numbers.[15]

---

[12] *Compare 2017 Annual Report*, United States Military Academy Board of Visitors, 12 (Dec. 20, 2017), https://s3.amazonaws.com/usma-media/inline-images/about/board_of_visitors/board_of_visitors_2017_annual_report.pdf (describing plan to move 178 people from West Point to AWPAA roles by July 2017, followed by more), *with Staff Directory*, https://goarmywestpoint.com/staff-directory (listing approximately 240 people).

[13] In 2019, the IRS granted the exemption.

[14] *Army West Point Athletic Association*, CHAR410: Registration Statement.

[15] *Compare Staff Directory*, https://goarmywestpoint.com/staff-directory *with* "Intercollegiate Athletics, Directorate of," *2016 West Point, The United States Military Academy Telephone Directory*, https://s3.amazonaws.com/usma-media/pdfs/ABOUT/Public%20Affairs/west_point_telephone_directory.pdf (listing the same phone numbers for AWPAA and West Point athletic department staff positions).

44.     By Army regulation, the military deputy athletic director, Colonel Gretchen Nunez, exercises day-to-day oversight over the allotment of West Point resources, while also serving within AWPAA's organizational structure.[16]

45.     Distinct from West Point's agreements with AWPAA, its active membership in the National Collegiate Athletic Association (NCAA) requires West Point's "president or chancellor" to be "responsible for the administration of *all aspects of the athletics program*."[17] The NCAA expressly places responsibility on "the institution" for "the conduct of its intercollegiate athletics program," including over the actions of "staff, student athletes, and other individuals and groups representing the institution's athletics interests."[18]  West Point's eligibility for NCAA membership expressly depends on its satisfying these responsibilities.

### Mr. Libit's FOIA Requests to West Point and AWPAA

46.     After West Point established AWPAA, it began to claim that it no longer had an obligation to make public any information concerning its athletic programs.

47.     In 2017, a *USA Today* report found that West Point was using its affiliated athletic association as a shield to avoid disclosure under FOIA.[19]

48.     This came as a surprise to many, including former Secretary of the Army John McHugh. When he served in Congress, McHugh had co-sponsored legislation authorizing the

---

[16] *Army West Point Athletic Association, Inc. Independent Auditors' Report and Statements of Financial Position*, PKF O'Connor Davies, 20 (Dec. 22, 2020), https://projects.propublica.org/nonprofits/display_audit/24698320201; Military deputy athletic director, Army Regulations 150-1-1-19 (Jan. 12, 2021).

[17] *See* NCAA, 2022-23 Division 1 Manual, Const. Art. 8.01.2, 12 (Aug. 1, 2022), https://web3.ncaa.org/lsdbi/reports/getReport/90008 (emphasis added).
[18] *Id.*, Art. 8.01.3.
[19] *Secret services: The hidden sports finances of Army, Navy and Air Force,* USA Today (Nov. 8, 2017), https://www.usatoday.com/story/sports/2017/11/08/secret-services-hidden-sports-finances-army-navy-and-air-force/820114001/.

service academies' athletic associations. As Secretary, he complained, "none of it was intended to shield information from the public."[20]

49.     Plaintiff has sought to shed greater light on the relationship between the military service academies and their deputized athletic associations in his reporting.

50.     On February 23, 2022, Plaintiff and Sportico submitted a FOIA request to West Point, seeking (1) the 2021 NCAA Financial Reporting Services (FRS) report for West Point; (2) West Point's current multimedia rights (MMR) agreement with sports media company Learfield; (3) the current agreement between AWPAA and West Point; and (4) the current employment contracts for West Point's head football and men's basketball coaches. A true and correct copy of the FOIA request is attached as Exhibit C.

51.     The very next day, West Point FOIA Officer James Bradbury denied the request in its entirety in an email. Notwithstanding the cooperative agreement between West Point and AWPAA under which West Point officials serve on the AWPAA's Board of Directors, Bradbury asserted that "[a]ny FRS, MMR, MOU/MOA, and employment contracts fall under the AWPAA," and "[t]he United States government and the United States Military Academy no longer has purview over any of the West Point Academy coaches contracts for any of the sports." Bradbury declined to produce any of the requested documents and instructed Plaintiff to direct his requests to AWPAA.

52.     Plaintiff responded by email, observing that because West Point and AWPAA share a cooperative agreement, West Point should have a copy of that agreement that is subject to disclosure by West Point under FOIA.

---

[20] *Id.*

53.     Bradbury responded by email asserting that the information sought was supposedly "readily available on the internet," and directing Plaintiff to the Army's 2017 press release announcing its agreement with AWPAA.

54.     When Plaintiff asked FOIA officer Bradbury whether either the Army or West Point had in their possession any documentation memorializing the arrangement with AWPAA other than the press release, Bradbury again told him to "refer all correspondence to the AWPAA." A true and correct copy of this email correspondence between Bradbury and Plaintiff is attached as Exhibit D.

55.     That same day, February 24, 2022, Plaintiff submitted a FOIA request to AWPAA seeking the same documents he had requested from West Point. He sent the request to West Point Senior Associate Athletics Director and Chief Financial Officer Wen-Kang Chang, who is AWPAA's designated representative according to its tax return. A true and correct copy of this request is attached as Exhibit E.

56.     The following day, Chang denied the request to AWPAA in its entirety, claiming that AWPAA is "a non-Federal entity" and not subject to FOIA. Chang further stated that AWPAA would not voluntarily release any information or documents. A true and correct copy of this response is attached as Exhibit F.

57.     On March 22, 2022, Plaintiff and Sportico administratively appealed West Point's and AWPAA's FOIA denials. Their appeal contended that the agencies violated FOIA by failing to conduct a search for the requested records and by failing to produce "agency records" subject to FOIA. A true and correct copy of this administrative appeal is attached as Exhibit G.

58.     Bradbury responded to the administrative appeal by email the next day, reiterating that "AWPAA is a private company that is not required to answer FOIA," and again directing Plaintiff to contact AWPAA for further information.

59.     Plaintiff and Sportico responded by requesting formal processing of their appeal as required by FOIA, citing 5 U.S.C. § 552(a)(6)(A)(ii). Bradbury responded by asking what formal process they were "looking for if West Point doesn't maintain the records for the Army West Point Athletic Association" and "AWPAA is a non-federal entity that is not subject to FOIA." A true and correct copy of this correspondence is attached as Exhibit H.

60.     Neither Bradbury nor any other West Point, Army, or AWPAA official has responded further to the administrative appeal.

61.     On August 1, 2022, Plaintiff submitted another FOIA request via an email to both West Point and AWPAA requesting:  (1) the current Army athletics apparel agreement with Nike; (2) the current employment contract for Athletic Director Mike Buddie; (3) any current Name, Image, and Likeness (NIL) consulting contracts for Army athletics; (4) the current agreement between AWPAA and CBS Sports Network (or its parent companies); and (5) recent emails sent by Mr. Chang containing the terms "FOIA," "FOIL," "Freedom of Information Act," and/or "non-Federal entity." A true and correct copy of this second request is attached as Exhibit I.

62.     At Bradbury's request, Plaintiff that same day filled out and submitted a FOIA request template for these documents. A true and correct copy of the template request is attached as Exhibit J.

63.     Upon receiving the template request, Bradbury immediately denied it that same day. He responded to Plaintiff's second FOIA request by asserting that all the requested records "fall under the AWPAA and not the government." Bradbury again instructed Plaintiff to reach out to AWPAA for the records (which he already had done). A true and correct copy of this correspondence is attached as Exhibit K.

64.     Three days later, on August 4, 2022, Wen-Kang Chang denied Plaintiff's second FOIA request to AWPAA.  The denial again claimed that AWPAA "is a non-Federal entity and not subject to" FOIA. A true and correct copy of this response is attached as Exhibit L.

65.     On October 7, Plaintiff submitted a third FOIA request to West Point seeking:  (1) the most recent employment contract(s) for a list of Army Athletics employees; (2) any agreements signed by or on behalf of AWPAA or any of its employees, board members, or officers, since Jan. 1, 2021 (giving several illustrative examples); and (3) certain email communications sent to or from West Point Superintendent Lt. Gen. Darryl A. Williams (giving specific key words). A true and correct copy of the third request is attached as Exhibit M.

66.     On October 27, 2022, Bradbury informed Plaintiff that the FOIA office was working to determine which parts of his third request "fall under the purview of the United States Military Academy/West Point and what points fall under the AWPAA." A true and correct copy of this correspondence is attached as Exhibit N.

67.     That same day, through counsel, Plaintiff wrote to West Point and AWPAA administratively appealing their denials of his August 1, 2022 second FOIA requests. A true and correct copy of this second administrative appeal is attached as Exhibit O.

68.     The administrative appeal contended that AWPAA is a "government-controlled corporation" and thus an "agency" subject to FOIA, pursuant to 5 U.S.C. § 552(f)(1).  The appeal contended AWPAA violated FOIA by refusing to produce the sought-after records within its custody and control. It further contended that West Point violated FOIA by refusing to produce records within its own custody and control.

69.     Plaintiff has received no response to this administrative appeal.  West Point and AWPAA have constructively denied it by failing to respond within 20 working days.

70.     On November 15, 2022, Bradbury responded to Plaintiff's third FOIA request to West Point. Bradbury denied the request for agreements signed by or on behalf of AWPAA or any of its employees, board members, or officers on the grounds that these records "fall under" or "belong" to AWPAA. A true and correct copy of this correspondence is attached as Exhibit P.

71.     In response, that same day, Plaintiff submitted a third FOIA request to AWPAA seeking the agreements signed by or on behalf of AWPAA.

72.     On November 21, 2022, West Point Senior Associate Athletics Director and Corporate Counsel Abigail Howard denied the third request to AWPAA on much the same grounds as the prior denials—that as "a registered New York nonprofit corporation," AWPAA needn't respond to FOIA requests. True and correct copies of Plaintiff's third FOIA request to AWPAA and its response are attached as Exhibit Q.

73.     On December 5, 2022, Plaintiff administratively appealed the denial of this FOIA request by West Point and AWPAA. The appeal asserted that AWPAA is a FOIA "agency" that must produce responsive records and that West Point must search for and produce records within its custody and control. A true and correct copy of this administrative appeal is attached as Exhibit R.

74.     Bradbury responded that same day asserting that "you are confusing two separate organizations, the garrison at West Point which falls under the Freedom of Information Act and the Army West Point Athletic Association that is a private 503c which does not have to respond to FOIA requests." A true and correct copy of this correspondence is attached as Exhibit S.

75.     Neither Bradbury nor any other individual acting on behalf of the Army, West Point, or AWPAA has responded further to Plaintiff's administrative appeal. More than 20 business days having since passed, the agencies have constructively denied the appeal.

15

76.     Plaintiff has fully exhausted his administrative remedies with respect to each of his three FOIA requests to Defendants. Having no other remedy, Plaintiff files this lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

## CLAIM FOR RELIEF

**(Violation of FOIA: Failure to Produce Agency Records)**

77.     Plaintiff Daniel Libit repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

78.     Defendant West Point is an agency subject to FOIA and must therefore upon request search for and disclose any records in its possession at the time of the requests that are not expressly exempt from disclosure by statute. It must also provide a lawful reason for withholding any responsive records or portions thereof.

79.     On information and belief, records sought by Plaintiff are within West Point's custody and control, including because West Point is a party to many of the records and because West Point has legal and logistical control over AWPAA and its records.

80.     West Point has violated FOIA, 5 U.S.C. § 552(a)(3)(A), by failing to conduct a reasonable search and failing to produce responsive records.

81.     As described above, Defendant AWPAA is also an agency subject to FOIA because it is a government-controlled corporation that exists exclusively to serve West Point. AWPAA is wholly controlled by and enmeshed within West Point, and it is financially accountable to the Secretary of the Army.

82.     As an agency subject to FOIA, AWPAA is required upon request to search for and disclose any records in its possession at the time of the request that are not expressly exempt from disclosure by statute. It must also provide a lawful reason for withholding any responsive records or portions thereof.

83.     AWPAA has violated FOIA, 5 U.S.C. § 552(a)(3)(A), by failing to conduct a reasonable search and failing to produce responsive records.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Declare that Defendants West Point and AWPAA are agencies subject to FOIA;

b.     Declare that the records sought are "agency records" under FOIA that must be disclosed unless specifically exempt from disclosure by statute;

c.     Order each Defendant immediately and expeditiously to conduct a thorough search for records responsive to Plaintiff's three requests;

d.     Order Defendants immediately and expeditiously to process any responsive records for disclosure and produce such records to Plaintiff;

e.     Enjoin Defendants from charging Plaintiff search, review, or duplication fees for the processing of the requests;

f.     Award Plaintiff his reasonable attorney's fees and costs, as authorized by FOIA; and

g.     Grant Plaintiff such further relief as the Court deems just and proper.


Dated: February 1, 2023

                              Respectfully submitted,

                              MEDIA FREEDOM & INFORMATION ACCESS
                              CLINIC

                              By:  _David A. Schulz_____
                              David A. Schulz, Supervising Attorney
                                 (S.D.N.Y. Bar No. DS-3180)
                              Kelsey R. Eberly, Supervising Attorney
                                 (*pro hac vice admission pending*)
                              MEDIA FREEDOM & INFORMATION ACCESS CLINIC
                              ABRAMS INSTITUTE

Yale Law School
1675 Broadway, 19th Floor
New York, NY 10019
Tel: (212) 850-6103
schulzd@ballardspahr.com
kelsey.eberly@ylsclinics.org
*Counsel for Plaintiffs*